# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ANDREA VALK PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: _____ |
| | ) |
| TPUSA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| TELEPERFORMANCE USA, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Andrea Valk Phillips, and files this claim against the Defendants, TPUSA, Inc., and Teleperformance USA, for employment discrimination on the basis of disability and retaliation, and states the following:

1. This action arises out of Plaintiff's employment by Defendant and is based upon:

    a. The Tennessee Disability Act, Tenn. Code Ann. § 8-50-103; and

    b. The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the ADA Amendments Act of 2008 ("ADAAA").

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and this Court has jurisdiction over Plaintiff's state causes of action under 28 U.S.C. § 1367. The state claims set out herein arose out of a common nucleus of operative facts, are related to the federal claims in that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

3. Venue is appropriate in this Court in accordance with 28 U.S.C. § 1391(b), because Defendants are residents of this District and all of the acts that constitute injury to the Plaintiff occurred in this District.

4. The Plaintiff, Andrea Valk Phillips (hereinafter "Plaintiff"), is a resident and citizen of Bristol, Virginia.

5. The Defendant, TPUSA, Inc. (hereinafter "Defendant TPUSA" or collectively with Teleperformance USA hereinafter "Defendants") is a Delaware corporation authorized to do business in Tennessee with a business location at 2536 State St., Bristol, Sullivan County, Tennessee 37620. Defendant TPUSA's registered agent for service of process is CT Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

6. The Defendant, Teleperformance USA (hereinafter "Defendant Teleperformance" or collectively with Defendant TPUSA hereinafter "Defendants") is a Delaware corporation authorized to do business in Tennessee with a business location at 2536 State St., Bristol, Sullivan County, Tennessee 37620. Defendant's registered agent for service of process is CT Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, Tennessee 37929-9710.

7. Defendants operate a business in Sullivan County, Tennessee, and the acts complained of occurred in Sullivan County, Tennessee.

8. Plaintiff has been employed by Defendants since on or about January 3, 2013.

9. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about April 16. 2015. The EEOC issued its Notice of Right to Sue on or about February 18. 2016.

10. Plaintiff worked as an assistant manager for Defendants, primarily as a customer advocate for Federal Express. Plaintiff was assigned to a desk and work station, and her job

2

Case 2:16-cv-00128-CLC-MCLC   Document 1   Filed 05/17/16   Page 2 of 11   PageID #: 2

involved sitting at her desk and talking with customers and others on the phone to resolve complaints and problems.

11. Plaintiff has a disability that consists of spondylosis and scoliosis of her lumbar spine. The origin of Plaintiff's back problems is a serious accident that occurred when she was a child. Plaintiff has undergone surgery and other treatment for years, and frequently has back pain and other related problems. Her pain and other problems are exacerbated by sitting at a chair at her desk.

12. In order to relieve the pressure on her back, Plaintiff has, for years, used a stool that was placed under her desk, which allowed her to rest her feet and legs in an elevated position. This made it possible for her to relieve some of the stress and pressure on her back and allowed her to work with less pain.

13. Defendants have been well aware of Plaintiff's back problems for years. Plaintiff had discussed her back problems with her supervisor on numerous occasions, and Plaintiff had utilized a stool under her desk since she began working for the Defendants. She discussed the stool on numerous occasions with her supervisor, and Plaintiff explained why she needed it. There had never been any problem with Plaintiff's using the stool until on or about April 15, 2015.

14. On or about April 15, 2015, Plaintiff was advised that she could not have any personal items at her desk, including the stool which she had been using to alleviate her back pain. Plaintiff immediately talked to Lisa Johnston in Defendants' Human Resources Department. Plaintiff explained to Lisa Johnston that Plaintiff had a medical need for the stool at her desk.

3

Case 2:16-cv-00128-CLC-MCLC   Document 1   Filed 05/17/16   Page 3 of 11   PageID #: 3

15. Plaintiff advised Lisa Johnston that she had used the stool since she first came to work for the Defendants and that Plaintiff's use of the stool was medically necessary.

16. Despite Plaintiff's protests, Defendants prohibited Plaintiff from using the stool. Approximately one week later, Ms. Jody Akers and Mr. Chris Fields, who were the Plaintiff's supervisors, asked Plaintiff to come into an office, and they advised Plaintiff that she needed a note from her doctor in order to continue using the stool. Ms. Akers and Mr. Fields engaged in this conversation with Plaintiff because the Manager of Human Resources, Jenny Bellamy, was on vacation. Ms. Akers and Mr. Fields informed Plaintiff that they had been told to take the stool from Plaintiff, and they advised Plaintiff that she would have to bring in a note from her doctor in order to use the stool. Plaintiff again explained to Defendants' representatives in-depth why Plaintiff needed the stool.

17. After the conversation with Ms. Akers and Mr. Fields on April 16, 2015, Plaintiff was excused from work in order to obtain the requested documentation from her neurosurgeon. Plaintiff went to her neurosurgeon's office, where she obtained the note that she was told that she would need (dated April 16, 2015), and also a report from an MRI which had been performed on her back (dated March 30, 2015), as well as office notes from Plaintiff's last visit to her neurosurgeon (dated April 9, 2015); collectively, these documents are referred to as Plaintiff's "Initial Medical Documentation."

18. Plaintiff returned to her place of work and delivered all of the Initial Medical Documentation to her Supervisor, Jody Akers. Ms. Akers is the person who had requested the information.

19. Upon the Plaintiff's request, Jody Akers made copies of the Initial Medical Documentation and gave Plaintiff back the originals. Ms. Akers then took the documents to the office of Bryson Haskell, who was a general manager.

20. Approximately one hour later, after Plaintiff had given these documents to Ms. Akers, Ms. Akers returned to the Plaintiff and apologized, stating that the information provided by Plaintiff from the neurosurgeon was not acceptable, and therefore, Plaintiff would not be allowed to use the stool. Ms. Akers did not provide any explanation as to why the medical documentation was unacceptable.

21. Approximately one week later, Ms. Akers returned to the Plaintiff and told Plaintiff that she had given the documents to Jenny Bellamy, the Human Resources Manager, and that for unknown reasons, the requested accommodation of the use of the stool was again denied. Neither Ms. Bellamy nor anyone else explained to Plaintiff that additional or different documentation was needed. Plaintiff was simply told that her requested accommodation for the use of the stool was denied.

22. Thereafter, Plaintiff approached another Supervisor, Laura Laughlin, and asked Ms. Laughlin to address Plaintiff's request for accommodations with the management of Defendants' place of business. This request was denied.

23. Having been repeatedly denied the requested accommodation, Plaintiff attempted to continue working without the stool. This caused Plaintiff to experience extreme pain and discomfort, and has damaged her back permanently.

24. For approximately six (6) weeks, Plaintiff tried to work without the stool, although she was in continuous pain. She tried to stand up, walk around, and do other things to alleviate the pain, but this became increasingly difficult.

25. On or about the latter part of May 2015, Plaintiff's back became extremely painful. Because she was in so much pain, Plaintiff went home for part of the day. She had to be helped to the parking lot and to her car. Plaintiff's blood pressure was also elevated. She tried to return to work, but the pain became unbearable, and Plaintiff proceeded to the hospital where she was admitted to the emergency room for back pain and high blood pressure.

26. On or about June 11, 2015, the Plaintiff, still trying to maintain her job, brought a second note from her neurosurgeon, dated June 11, 2015, and gave it to Defendants' representatives. Plaintiff was told that this was also not acceptable.

27. Due to her pain, high blood pressure, and other medical issues, Plaintiff had to be off work for three or four weeks. During this time she spoke with Jenny Bellamy by phone regarding the situation. At this time, Ms. Bellamy advised the Plaintiff that she could have the stool if she would bring in a third note from Plaintiff's doctor. Although Plaintiff was experiencing considerable pain, she wanted to keep working. Consequently, Plaintiff went to the doctor and obtained another note from her neurosurgeon, dated June 16, 2015, and promptly delivered a copy of the note to Ms. Bellamy.

28. At this point, Ms. Bellamy advised the Plaintiff that this note from the neurosurgeon was acceptable, and Ms. Bellamy allowed the Plaintiff to use her stool. Plaintiff returned to work and began using a box under her desk as a stool. Plaintiff began using a box because the stool she originally used was confiscated by the Defendants and never returned.

29. A few days later, Jenny Bellamy came to Plaintiff and ordered Plaintiff to come into Ms. Bellamy's office. Ms. Bellamy told the Plaintiff that she could not use the box, because it had a lid. Ms. Bellamy never explained why having a lid was a problem. Ms. Bellamy advised Plaintiff that she could use another stool if it did not have a lid, but only if Plaintiff signed a

specific form. The form, which Ms. Bellamy indicated would have to be signed by Plaintiff before Plaintiff would be allowed to use a lidless stool, is attached as Exhibit 1.

30. After reviewing the form, Plaintiff advised Ms. Bellamy that she could not sign it. Plaintiff refused to sign the form because the document appeared to state that the Defendants had acted properly and appropriately in providing an accommodation to the Plaintiff (which Plaintiff believes is not true) and because the form required the Plaintiff to agree that the Defendants had the right to change or remove the accommodation at any time at its discretion. Moreover, Plaintiff refused to sign the form because Plaintiff was not aware of any legal requirement that she sign such a form in order to obtain an accommodation.

31. Plaintiff did not agree that the Defendants should be able to deny her medically required accommodation at their discretion, and she did not want to express any such agreement by signing the form. Likewise, she did not agree that the Defendants had acted properly and appropriately in providing her an accommodation.

32. Plaintiff was then advised by Jenny Bellamy that Plaintiff could not use a stool of any nature because she would not sign the form.

33. As a result of being denied her request for a reasonable accommodation, Plaintiff returned home. Defendants have never agreed for Plaintiff to return to work without signing the form. In addition, Plaintiff has at times been unable to return to work because of the back pain that resulted from her inability to use a stool at her workplace. Plaintiff's pain and her condition have been greatly exacerbated by the Defendant's failure to provide a simple, reasonable accommodation. Since the time that her stool was taken away, Plaintiff has had considerable pain, continued high blood pressure (which she believes is a result of her pain), and two back procedures. She was scheduled for a third procedure on her back in late April, 2016.

34. Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act and the Tennessee Disability Act.

35. Plaintiff notified the Defendants of her disability and the need for an accommodation and provided Defendants more than ample documentation of such need.

36. Had Defendants provided the simple accommodation of allowing Plaintiff to use a stool, which Plaintiff was willing to provide for herself, Plaintiff would have been able to perform the duties and requirements of her job.

37. Allowing the Plaintiff to use a stool at her workstation would not have caused an undue hardship for the Defendants.

.

## **DISABILITY DISCRIMINATION**

38. Plaintiff incorporates Paragraphs 1 through 37 above as if fully set forth herein.

39. Plaintiff asserts that Defendants discriminated against her on the basis of her disability in violation of The Americans With Disabilities Act, ("ADA") 42 U.S.C. §§ 12101 *et seq.,* the ADA Amendments of 2008 ("ADAAA"), and The Tennessee Disability Act, T.C.A. § 8-50-103;

40. Plaintiff alleges that Defendants treated her differently than non-disabled employees, and Defendants' actions were deliberate, willful and intentional discrimination based upon Plaintiff's disability.

41. Defendants perceived or regarded Plaintiff's health conditions as a disability.

42. Defendants discriminated against Plaintiff and treated her poorly as a result of her Plaintiff's disability.

43. Defendants also violated Plaintiff's rights under the Tennessee Disability Act by retaliating against her for filing a complaint of discrimination and harassment against the Defendants.

44. Defendants' continued discrimination against Plaintiff culminated in Plaintiff's damages as set forth herein.

45. Defendants' actions as set forth herein constitute an adverse employment action.

46. Defendants are vicariously liable for the actions and inappropriate conduct of their employees, agents and/or representatives because: (a) the Defendants did not exercise reasonable care to promptly correct and prevent the handicap and disability discriminating behavior; (b) the Defendants did not properly supervise and train the Plaintiff's supervisors regarding appropriate behavior towards employees; (c) the Defendants did not properly train the Plaintiff's supervisors regarding the Defendants' policies towards a workplace free of disability discrimination; and (d) the Defendants did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report disability discrimination occurring with the Defendants' workplace.

## **RETALIATION**

47. Plaintiff incorporates Paragraphs 1 through 46 above as if fully set forth herein

48. After filing her EEOC Charge of Discrimination, Plaintiff learned that other employees were allowed to use similar items to rest or elevate their legs at their workstation. Plaintiff alleges that she filed a complaint for retaliation with the EEOC on or about December 7, 2015.

49. Plaintiff alleges that she was treated differently than other employees in retaliation of her filing a charge of discrimination with the EEOC, and for her refusal to sign an accommodation form that is not required by either the ADA or the ADAAA.

50. Plaintiff alleges that such treatment constitutes unlawful retaliation, and that this unlawful treatment is continuing

## APPLICABLE TO ALL COUNTS

51. Plaintiff has suffered direct pecuniary losses as a result of Defendants' violations of the law, as set out above, and Plaintiff will continue to suffer direct pecuniary losses as a result of Defendants' actions as set out herein.

52. Plaintiff is entitled to compensation for past, present, and future wages and benefits, front pay, back pay, incidental damages, liquidated damages, attorneys' fees, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other nonpecuniary damages.

53. Plaintiff further submits that the Defendants acted: (a) intentionally, (b) maliciously, or (c) recklessly and that Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff prays for the following relief:

A. That process issue against the Defendants requiring Defendants to answer this Complaint within the time required by law;

B. That Plaintiff be awarded compensatory damages in the amount of $750,000.00 or an amount to be determined by the jury;

C. That Plaintiff be awarded punitive damages in the amount of $750,000.00 or an amount to be determined by the jury;

D. That Plaintiff be awarded compensation for past, present and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other non-pecuniary losses, back pay, front pay, and all relief to which she is entitled under the statutes and laws set out above;

E. That Plaintiff be awarded equitable relief as appropriate;

F. That the Court award the Plaintiff attorney's fees and costs incurred in prosecuting this action and discretionary costs;

G. That the Court award the Plaintiff such other, further, general and different relief to which she may be entitled; and

H. That a jury try this action.

Respectfully submitted,

/s/ E. Patrick Hull
E. Patrick Hull, BPR No. 004437
Attorney for Plaintiff
P.O. Box 1388
Kingsport, TN  37662
423-247-6151
Fax:  423-247-6152
Email:  pat@hull-firm.com


/s/ Jason M. Ensley
Jason M. Ensley, BPR No. 020066
ENSLEY, BAKER & SHADE, PLLC
Attorney for Plaintiff
801F Sunset Dr., Suite 2
Johnson City, TN  37604
423-631-0550
Fax:  423-631-0555
Email:  jensley@ensleybakershade.com

*Attorneys for Plaintiff*